# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **D.B.,** | Case No. 3:22-cv-00432 |
| Plaintiff, | **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS G6 HOSPITALITY, LLC, G6 HOSPITALITY FRANCHISING, LLC, AND G6 HOSPITALITY REAL ESTATE, LLC'S MOTION TO DISMISS** |
| v. | |
| **IE HOTEL GROUP, LLC (d.b.a. STUDIO 6–PORTLAND); G6 HOSPITALITY, LLC; G6 HOSPITALITY FRANCHISING, LLC; G6 HOSPITALITY REAL ESTATE, LLC; SHILASH PATEL; VIPUL PATEL,** and **JOHN DOES 1–5,** | |
| Defendants. | |

Andrew C. Lauersdorf and Christine A. Webb, Maloney Lauersdorf Reiner PC, 1111 E. Burnside Street, Suite 300, Portland, OR 97214. Joel Shapiro, Law Office of Joel Shapiro, LLC, 1420 NW Lovejoy Street, Suite 631, Portland, OR 97209. Attorneys for Plaintiff.

Austin Rainwater, David Freeburg, Alexandra N. Burgess, Angela C. Agrusa, and Shannon E. Dudic, DLA Piper LLC (US), 2000 Avenue of the Stars, North Tower, Suite 400, Los Angeles, CA 90067. Attorneys for Defendants G6 Hospitality LLC, G6 Hospitality Franchising LLC, and G6 Hospitality Real Estate LLC.

Christopher E. Hawk and Thomas Castelli, Gordon & Rees, LLP, 1300 SW 5th Avenue, Suite 2000, Portland, OR, 97201. Attorneys for Defendants IE Hotel Group, LLC (d.b.a. Studio 6-Portland) and Shilash Patel.

Andrew D. Glascock, Glascock Street Waxler LLP, 6915 S Macadam Ave., Suite 300, Portland, OR 97219. Attorney for Defendant Vipul Patel.

PAGE 1 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART G6 DEFENDANTS' MOTION TO DISMISS

**IMMERGUT, District Judge.**

Plaintiff D.B. ("Plaintiff") filed suit against Studio 6–Portland, IE Hotel Group, LLC (d.b.a. Studio 6–Portland), G6 Hospitality, LLC, G6 Hospitality Franchising, LLC, G6 Hospitality Real Estate, LLC, Shilash Patel, Vipul Patel, and John Does 1–5 (collectively "Defendants") in Multnomah County Circuit Court on December 31, 2021 alleging claims arising out of her being sex trafficked at a Portland motel. ECF 1-1 at 4. On March 16, 2022, Plaintiff filed a First Amended Complaint. ECF 1-1 at 24. Plaintiff brings claims of direct negligence and direct liability under Oregon Revised Statute ("O.R.S") § 30.867 against all Defendants. *Id.* at ¶¶ 54–66. Plaintiff also brings both a negligence claim and a claim pursuant to O.R.S. § 30.867 under a theory of vicarious liability against IE Hotel Group, LLC[1] ("IE"), G6 Hospitality, LLC, G6 Hospitality Franchising, LLC, and G6 Hospitality Real Estate, LLC. *Id.* at ¶¶ 67–71. On March 16, 2022, Defendants G6 Hospitality, LLC, G6 Hospitality Franchising, LLC, and G6 Hospitality Real Estate, LLC (collectively "G6 Defendants") removed the case to federal court. ECF 1.

Before this Court is G6 Defendants' Motion to Dismiss. ECF 19. For the following reasons, this Court DENIES G6 Defendants' motion as to Plaintiff's direct and vicarious negligence claims, DENIES G6 Defendants' motion as to Plaintiff's vicarious claim under

---

[1] Plaintiff brings a vicarious claim against "Studio 6." ECF 1-1 at ¶ 68. Although Plaintiff states that Defendants Studio 6–Portland and IE will be referred to collectively as "Studio 6 Defendants" in the Complaint, *id.* at 16, Defendant IE Hotel Group, LLC is the legal entity doing business as "Studio 6–Portland" that owns the hotel property at issue, *id.* at ¶ 12. This Court construes Plaintiff's references to "Studio 6" as directed toward Defendant IE Hotel Group, LLC for the purposes of Plaintiff's vicarious claims. *See* ECF 1-1 at ¶¶ 68, 70.

PAGE 2 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART G6 DEFENDANTS' MOTION TO DISMISS

O.R.S. § 30.867, and GRANTS G6 Defendants' motion as to Plaintiff's direct claim under O.R.S. § 30.867 with leave to amend.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs.*, *Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a

probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation

marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

Federal courts sitting in diversity apply substantive state law. *Erie R.R. Co. v. Tompkins*,

304 U.S. 64, 80 (1938); *see* ECF 1 at 2 (removing this action based on diversity jurisdiction).

When applying state law, a federal court is bound by the decisions of the state's highest court.

*Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). If the state's highest court

has not yet squarely addressed a question, the federal court must predict how the state court

would resolve it. *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 (9th Cir. 2016)

(citing *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 812 (9th Cir.

2002)). "Where the state's highest court has not decided an issue, '[federal courts] look[] for

guidance [in] decisions by intermediate appellate courts of the state and by courts in other

jurisdictions.'" *Bozzio v. EMI Grp. Ltd.*, 811 F.3d 1144, 1151 (9th Cir. 2016) (citation omitted).

The following facts are taken from the Complaint, and are accepted as true, for purposes of this

motion.

## BACKGROUND

In February of 2019, Plaintiff was trafficked for approximately one week at a Studio 6

motel property in Portland, Oregon. ECF 1-1 at ¶¶ 1–3, 52. Plaintiff exhibited many indicators of

vulnerability for recruitment into sex trafficking: she was on disability and was financially

vulnerable, did not have stable housing, was raised in foster care, lacked family and social

support, suffered from mental health diagnoses, and was a recovering addict. *Id.* at ¶ 49.

Originally, Plaintiff agreed to meet the "recruiter," believing the meeting to be a date. *Id.* at ¶ 45.

Instead, the recruiter brought her to Studio 6, where the two partied with two people who

ultimately became Plaintiff's traffickers. *Id.* Soon, the recruiter left, and the male trafficker told Plaintiff that she was not free to leave and had to engage in sex for money. *Id.* at ¶ 46. The traffickers also informed Plaintiff that she had to follow their rules and threatened violent consequences if she did not. *Id.* In the Studio 6 room, the female trafficker took photos of Plaintiff and uploaded them in an online advertisement for commercial sex. *Id.* at ¶ 47. The trafficker also told Plaintiff that she would be required to "walk the track" on NE 82nd Avenue to solicit customers when there were no online customers. *Id.*

Over the course of nearly a week, Plaintiff was trafficked through fraud, coercion, and threats of force and engaged in multiple commercial sexual transactions per day against her will. *Id.* at ¶¶ 2–4, 52. Plaintiff was not allowed to leave the room without her traffickers, unless it was to smoke a cigarette within view of the room. *Id.* at ¶ 50. If Plaintiff failed to earn enough money, the traffickers deprived Plaintiff of food. *Id.* at ¶ 51. At the time of Plaintiff's trafficking, Defendant John Doe 1 worked the front desk of Studio 6. *Id.* at ¶ 37. Defendant John Doe 1 paid for sex with the female trafficker. *Id.* Defendant John Doe 1 also spoke with Plaintiff and implied that she should engage in a three-way sexual relationship with him and his girlfriend. *Id.* at ¶ 39. Defendant John Doe 1 did not report suspected human trafficking to his General Manager. *Id.* At the first possible moment when Plaintiff was not being watched closely by her traffickers, Plaintiff called the police and fled. *Id.* at ¶ 52.

The motel property where Plaintiff was trafficked, Studio 6–Portland ("Studio 6"), is located on NE 82nd Avenue in Portland, Oregon. *Id.* at ¶ 1. Defendant IE Hotel Group, LLC, a California corporation doing business as Studio 6–Portland, owns and operates Studio 6 as a franchisee of one or more G6 Defendants. *Id.* at ¶ 12. G6 Defendants are Delaware companies in the motel business that build, operate, and manage motels—including Studio 6—through

franchises. *Id.* at ¶¶ 13–15. Under the franchise agreement, G6 Defendants require Defendant IE to follow corporate policies regarding the following: bookings, reservations, room rates, websites, rewards programs, revenue management tools, profit sharing terms, hiring procedures, employment policies, training, decisions, and wages, building and design standards, rules of operation, facilities and operations inspections, security policies and procedures, and human trafficking practices and programs. *Id.* at ¶ 70. G6 Defendants also receive a share of each room rental payment at Studio 6. *Id.* at ¶ 44.

There are reported incidents dating back to 2003 of a male trafficker using a G6 Hospitality property for sex trafficking involving extreme violence, rape, drug use, and minor victims. *Id.* at ¶ 25. G6 Hospitality properties have been connected to sex trafficking reports predating Plaintiff's trafficking in at least twenty-six different states. *Id.* at ¶ 26. Sex trafficking crimes have been reported at G6 Hospitality properties in Portland, including an arrest in 2012 of a male trafficker ultimately resulting in a conviction. *Id.* at ¶ 27, n.2. That incident involved two victims, including a sixteen-year-old who was advertised online for sex, made to "walk the track" on 82nd Avenue, forced to abide by strict rules, and deprived of food if she did not earn enough money. *Id.* at ¶ 27. In a separate incident, a male and female pair of traffickers were convicted of multiple felonies for trafficking a seventeen-year-old girl at a different G6 Hospitality property in Portland in 2017. *Id.* at ¶ 28.

The Studio 6 property where Plaintiff was trafficked is located on 82nd Avenue, an area placed into a "prostitution free zone" to support efforts to eliminate sex trafficking and prostitution. *Id.* at ¶ 29. Over the five years before Plaintiff brought this suit, multiple online reviews of Studio 6 mention or allude to sex trafficking. *Id.* at ¶ 30. In a Trip Advisor review of the property in May of 2016, a reviewer wrote: "I have stayed in hundreds of motels. So I feel

confident in saying this place should be shut down! It's awful! Hookers, in the parking garage,

working! Drug dealers, pimps and gang members!" *Id.* at ¶ 31. That same month, another Trip

Advisor reviewer wrote: "The people staying long term here are scary, look like drug dealers and

prostitutes." *Id.* Less than nine months before Plaintiff's trafficking, a Yelp reviewer wrote:

"Great place if you are able are willing to deal... with the sex trafficking network that chooses to

stay here there are safes places in [t]he same neighborhood Along the same street." *Id.* at ¶ 32.

In 2018, the year before Plaintiff was trafficked, G6 Hospitality announced it was

increasing its commitment to preventing sex trafficking:

> Our commitment to anti-trafficking efforts is made clear through our comprehensive
> awareness, training and response program. In 2018, G6 overhauled its training materials
> and program to ensure it was relevant for Motel 6 and Studio 6 team members and
> contained updated information on our anti trafficking efforts, including how to spot the
> signs of and help prevent human trafficking. Motel 6 and Studio 6 trains all staff — from
> the General Manager through the most junior housekeepers — to be the "eyes and ears"
> and to alert the property's General Manager, local police, and the Motel 6/Studio 6 Hotline
> upon observing any signs of suspected human trafficking or prostitution.

*Id.* at ¶ 35. G6 Hospitality acknowledged in its anti-trafficking policy statement that its efforts to

prevent trafficking require comprehensive awareness and training, including overhauled training

materials on how to spot the signs of trafficking. *Id.* at ¶ 43. Widely-known indicators and red

flags of trafficking include: customers paying with cash daily, with no credit card registered at

sign-in, frequent male visitors to a room for short periods of time, male visitors arriving at

unusual times, guests showing signs of fear, anxiety, tension, submission, and/or nervousness,

guests showing signs of physical abuse, restraint, and/or confinement, guests showing signs of

malnourishment, guests lacking freedom of movement or being constantly monitored, and guests

having no money, no luggage, and few or no personal items. *Id.*

**DISCUSSION**

**A.  Anonymity Under Federal Rule of Civil Procedure 10(a)**

This Court first addresses Plaintiff's "Motion to Designate Known Party Using Pseudonym." ECF 1-1 at 2–3. Due to Plaintiff's status as a victim of sex trafficking and the "sensitive nature" of sexual abuse cases, Plaintiff seeks leave of this Court to proceed under the pseudonym "D.B.." *Id.* Under Federal Rule of Civil Procedure 10(a), a complaint must "name all the parties." Fed. R. Civ. P. 10(a). "In this circuit, we allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000) (internal quotation marks and citation omitted). "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. The Ninth Circuit does not require a plaintiff to obtain leave to proceed anonymously before filing an anonymous pleading. *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 945 (D. Or. 2020) (citation omitted). Because this Court finds the need for anonymity outweighs any prejudice to the Defendants and the public, this Court grants leave for Plaintiff to proceed under the pseudonym "D.B." in this case.

**B.  Negligence Claim**

Plaintiff brings a negligence claim against all Defendants, alleging that Defendants breached their duty to protect Plaintiff from harm by "failing to properly train and supervise their agents and employees, failing to hire proper personnel, failing to provide for safety and security, and failing to intervene in illegal or unsafe conduct at Studio 6." *Id.* at ¶¶ 55–56. Plaintiff claims

that G6 Defendants owed a heightened duty of care as the possessors of a business premises. *Id.*
at ¶ 55. Plaintiff brings her negligence claim against G6 Defendants directly as well as
vicariously for the actions of franchisee Defendant IE and its employees. For the reasons stated
below, this Court DENIES G6 Defendants' Motion to Dismiss both Plaintiff's direct liability
negligence claim and Plaintiff's vicarious liability negligence claim.

### 1. Negligence - Direct Liability

G6 Defendants move to dismiss Plaintiff's direct liability negligence claim on the ground
that Plaintiff did not sufficiently allege Defendants had a legal duty to prevent Plaintiff's
trafficking. ECF 19 at 25. Typically, the elements of common-law negligence require a plaintiff
to plead and prove that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached
that duty, and (3) the breach was the cause-in-fact of a legally cognizable damage to the plaintiff.
*Chapman v. Mayfield*, 358 Or. 196, 205 (2015). However, under Oregon's contemporary
jurisprudence, "the traditional duty-breach analysis is subsumed in the concept of general
foreseeability, 'unless the parties invoke a status, a relationship, or a particular standard of
conduct that creates, defines, or limits the defendant's duty.'" *Id.* (quoting *Fazzolari v. Portland
School Dist. No. 1J*, 303 Or. 1, 17 (1987)). *See generally Oregon Steel Mills, Inc. v. Coopers &
Lybrand, LLP*, 336 Or. 329, 340 (2004) (discussing shift in Oregon jurisprudence). Where there
is no special status, relationship, or standard, "the plaintiff must plead and prove that the
defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to
the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Chapman*, 358
Or. at 205.

### a. Special Relationship

Plaintiff alleges that G6 Defendants had a "duty to protect [her] from harm" under a "heightened duty of care as the possessors of a business premises." ECF 1-1 at ¶ 55. G6 Defendants argue that Plaintiff does not allege a special relationship with G6. ECF 19 at 26. Under Oregon law, "[b]usiness owners and operators have a heightened duty of care toward patrons—invitees—with respect to the condition of their premises that exceeds the general duty of care to avoid unreasonable risks of harm to others." *Bagley v. Mt. Bachelor, Inc.*, 356 Or. 543, 563 (2014) (citations omitted). "In general, it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit." *Id.* (quoting *Woolston v. Wells*, 297 Or. 548, 557 (1984)). "[A] business operator's obligation to make its premises reasonably safe for its invitees includes taking into account the use to which the premises are put." *Id.* at 564 (citations omitted). "[A] business, as a possessor of premises, has a duty to take reasonable steps to protect its visitors from reasonably foreseeable criminal acts by third persons." *Stewart v. Kids Inc. of Dallas*, 245 Or. App. 267, 278 (2011).

Plaintiff has not sufficiently pled a special relationship between Plaintiff and G6 Defendants implicating a heightened duty of care. Plaintiff argues that "G6 Defendants owed her a heightened duty of care as owners and franchisors of the hotel property." ECF 29 at 11–12. However, Plaintiff alleges in her complaint that Defendant IE, rather than G6 Defendants, owns the hotel property. ECF 1-1 at ¶ 12. While Plaintiff alleges that G6 Defendants built, operated, and managed Studio 6 through a franchise, *see id.* at ¶¶ 12–15, Plaintiff has failed to cite any authority for the proposition that a franchisor owes a heightened duty of care to its franchisee's customer under Oregon law. Furthermore, "Oregon has adopted the *Restatement (Second) of Torts* (1965), which defines a "possessor of land" as "'a person who is in occupation of the land

with intent to control it.'" *Cain v. Bovis Lend Lease, Inc.*, 817 F. Supp. 2d 1251, 1273 (D. Or. 2011) (quoting *Fireman's Fund Am. Ins. Cos. v. United States*, 482 F. Supp. 893, 896 (D. Or. 1979); Restatement (Second) of Torts § 328E(a) (1965)). Plaintiff has failed to allege facts showing that G6 Defendants were in occupation of the motel property. Therefore, as G6 Defendants do not qualify as possessors under Oregon law, they did not owe Plaintiff a heightened duty of care based on a special relationship. *See Bagley*, 356 Or. at 563.

### b. General Foreseeability

Defendants also move to dismiss Plaintiff's direct liability negligence claim by asserting that Plaintiff did not adequately allege that G6 Defendants unreasonably created a foreseeable risk of her being sex trafficked at Studio 6. ECF 19 at 26. For a negligence claim where there is no special status, relationship, or standard, "the plaintiff must plead and prove that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Chapman*, 358 Or. at 205. Foreseeability, which serves "as a limit on the scope of liability," considers "what prospectively might happen" and is separate from causation. *Fazzolari*, 303 Or. at 13. "It is not necessary that the risk of harm be more probable than not; rather, the question is whether a reasonable person considering the potential harms that might result from his or her conduct would have reasonably expected the injury to occur." *Chapman*, 358 Or. at 206 (internal quotation marks and citation omitted); *see also Stewart v. Jefferson Plywood Co.*, 255 Or. 603, 609 (1970) (en banc) ("[T]he community deems a person to be at fault only when the injury caused by him is one which could have been anticipated because there was a reasonable likelihood that it could happen.").

G6 Defendants first argue that Plaintiff provided "shotgun" negligence allegations not plausibly alleged as to G6 Hospitality. ECF 19 at 27. Pursuant to Federal Rule of Civil Procedure 8(a)(2), a pleading that states a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard under Rule 8 "does not require 'detailed factual allegations . . . .'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). However, the pleading must contain more than "labels and conclusions" or "'naked assertion[s]' devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557). Pleadings that seek to overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for the defendants to make informed responses to the plaintiff's allegations are considered "shotgun" pleadings. *A.B. v. Hilton Worldwide*, 484 F. Supp. at 943 (citing *Autobidmaster, LLC v. Alpine Auto Gallery, LLC*, No. 3:14-cv-1083-AC, 2015 WL 2381611, at *15 (D. Or. May 19, 2015)). Another type of "shotgun" pleading is a complaint that asserts claims against "multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Id.* (quoting *Nissen v. Lindquist*, No. C16-5093 BHS, 2017 WL 26843, at *2 (W.D. Wash. Jan. 3, 2017)).

While it is true that Plaintiff's allegations are stated generally against all Defendants, Plaintiff also clearly alleges facts that specifically relate to G6 Defendants regarding this claim. For example, Plaintiff alleges Defendants generally were negligent in "failing to develop and implement adequate policies to identify and prevent sex trafficking," "failing to hire proper personnel," "failing to properly train and supervise their agents and employees," and "failing to implement regular periodic training for all staff on indicators of sex trafficking." ECF 1-1 at ¶ 56. Plaintiff additionally alleges that G6 Defendants specifically maintained control over hiring procedures, employment policies and decisions, rules of operation, standardized employee

training, security policies and procedures, and practices and programs to prevent human trafficking. *Id.* at ¶ 70. Therefore, construed as a whole, Plaintiff's complaint provides sufficient allegations regarding her negligence claim clearly directed towards G6 Defendants.

G6 Defendants also claim that Plaintiff's allegations of foreseeability are insufficient because they are premised on "generalized knowledge of the potential for crime." ECF 19 at 27. Instead, Defendants contend that Oregon precedent requires knowledge of an unreasonable risk of danger to the *particular plaintiff* involved. *Id.* In *Piazza v. Kellim*, the Oregon Supreme Court clarified the foreseeability analysis required under Oregon law. 360 Or. 58, 69–82 (2016). When evaluating negligence claims arising from third-party criminal acts, "there is a common requirement: a trier of fact must be able to find from concrete facts that a reasonable person in the position of the defendant reasonably would have foreseen that the person or location and circumstances posed a risk of criminal harm to persons such as the plaintiff." *Id.* at 81 (citing *Towe v. Sacagawea, Inc.*, 357 Or. 74, 86 (2015); *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329, 340 (2004); *Fazzolari*, 303 Or. at 17). In making a foreseeability determination, a court should consider the following facts: (1) the similarity, frequency, and recency of prior criminal acts, (2) whether prior criminal acts were committed under the same or similar circumstances, (3) whether prior criminal acts were committed at or near the same location, (4) whether prior criminal acts involve the same or similar types of victims, and (5) the place and character of the location of the current criminal act. *Id.* at 81 (citing *Chapman*, 358 Or. at 220–22; *Buchler*, 316 Or. at 511–12).

Relying on *Buchler*, *Chapman*, and *Stewart*, G6 Defendants argue that to plausibly allege foreseeability, Plaintiff must allege G6 Defendants were aware of the risk of danger *to Plaintiff specifically*. *See Buchler v. State By & Through Oregon Corr. Div.*, 316 Or. 499 (1993);

*Chapman v. Mayfield*, 358 Or. 196 (2015); *Stewart v. Kids Inc. of Dallas, OR*, 245 Or. App. 267 (2011). However, Defendants interpret this precedent in error. Under the above analysis in *Piazza*—a case that postdates the cases relied upon by Defendants—a plaintiff need not allege that defendants were aware of the risk of danger to plaintiff specifically. Rather, a plaintiff need only allege that defendants were aware of the risk of danger to persons *such as* the plaintiff. Plaintiff has sufficiently pled facts suggesting that her trafficking was foreseeable to G6 Defendants under the *Piazza* analysis.

      First, Plaintiff cites multiple online reviews and criminal reports to plausibly suggest that G6 Defendants were aware of sex trafficking—the very same criminal act at issue here—on their properties generally and at Studio 6 specifically. ECF 1-1 at ¶¶ 24–33. Plaintiff alleges that G6 Hospitality properties have been connected to sex trafficking reports predating Plaintiff's trafficking in at least twenty-six different states, a statistic suggesting the frequency of these criminal acts. *Id.* at ¶ 26. Less than nine months before Plaintiff's trafficking, a Yelp reviewer evaluated Studio 6 by observing: "[g]reat place if you are able are willing to deal... with the sex trafficking network that chooses to stay here there are safes places in [t]he same neighborhood Along the same street." *Id.* at ¶ 32. In addition, in 2018, the year before Plaintiff was trafficked, G6 Hospitality announced an increased commitment to preventing sex trafficking, including overhauled training materials on how to spot the signs of trafficking. *Id.* at ¶ 43. Taken together, these two allegations indicate the recency of criminal acts of sex trafficking both at Studio 6 and G6 Hospitality properties more generally.

      In accordance with the requirements of *Piazza*, Plaintiff points to reports of sex trafficking that resemble her trafficking both in terms of the circumstances and the location of the criminal acts. For example, citing an arrest and conviction of a male trafficker for acts at a

G6 Hospitality property in Portland, *id.* at ¶ 27, n.2., Plaintiff notes that one victim was subject to similar treatment: she was also advertised online for sex, "walk[ed] the track" on 82nd Avenue, followed strict rules, and was deprived of food if she did not earn enough money. *Id.* at ¶¶ 27, 46–47, 51. A 2017 incident of trafficking at a Portland G6 Hospitality property also involved a male and female pair of traffickers, as was the case during Plaintiff's trafficking. *Id.* at ¶¶ 28, 45. While the facts alleged by Plaintiff do not provide details about the victims of the prior acts of trafficking, it is true that at least two victims were minors—unlike Plaintiff—at the time of their trafficking. *Id.* at ¶¶ 27, 28. Nonetheless, online reviews of the Studio 6 property where Plaintiff was trafficked indicate its reputation for sex trafficking: over the five years before Plaintiff brought this suit, multiple online reviews mention or allude to sex trafficking. *Id.* at ¶¶ 30–32. Further, the Studio 6 property is located on 82nd Avenue, an area placed into a "prostitution free zone" to support efforts to eliminate sex trafficking and prostitution. *Id.* at ¶¶ 29.

In sum, Plaintiff does not rely on allegations that crime is generally foreseeable, but rather that G6 Defendants were aware of the repeated occurrences of similar sex trafficking acts on their properties and at Studio 6. *Compare Uihlein v. Albertson's, Inc.*, 282 Or. 631, 640–42 (1978) (store not liable for shopper assaulted in supermarket when little evidence of unsafe location) *with Brown v. J.C. Penney Co.*, 297 Or. 695, 710 (1984) (store liable for shopper attacked in parking lot where there was ample evidence of criminal activity in area). As required by *Piazza*, Plaintiff plausibly alleges facts that G6 Defendants "reasonably would have foreseen that the person or location and circumstances posed a risk of criminal harm to persons such as [Plaintiff]." *Piazza*, 360 Or. at 81. Plaintiff has therefore sufficiently pled a cognizable legal theory to support the claim that G6 Defendants unreasonably created a foreseeable risk of her trafficking.

Finally, G6 Defendants maintain that Plaintiff's allegations of foreseeability fall short because Plaintiff's allegations amount to mere "facilitation" under Oregon law, rather than an unreasonable creation of a risk. ECF 19 at 27. G6 Defendants rely on the description of "facilitation" in *Buchler*: "mere 'facilitation' of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it." *Buchler*, 316 Or. at 511–12. This Court disagrees. Plaintiff has not alleged the risk created by the G6 Defendants so broadly as to amount to "mere facilitation" under Oregon precedent.

The Oregon Supreme Court has clarified that "mere facilitation" refers to the problem of "describing the type of harm at risk too generally," *Piazza*, 360 Or. at 75–76, such that criminal acts would become "the legal responsibility of everyone who may have contributed in some way to the criminal opportunity," *id.* at 75 (citing *Buchler*, 316 Or. at 511). In this case, Plaintiff alleges specifically that G6 Defendants unreasonably created the risk of her sex trafficking by failing to implement policies and proper training regarding sex trafficking, after allegedly becoming aware of sex trafficking at their properties generally and at Studio 6, specifically. ECF 1-1 at ¶¶ 56, 24–33. Accordingly, G6 Defendants' motion to dismiss Plaintiff's direct negligence claim is DENIED.

### 2. Negligence - Vicarious Liability

Plaintiff alleges G6 Defendants are vicariously liable for franchisee Defendant IE and its employees' failure to protect Plaintiff from harm. To state a negligence claim for vicarious liability under an agency theory, Plaintiff must plausibly allege that (1) G6 Defendants and Defendant IE were in an agency relationship, and (2) Defendant IE or its hotel staff are plausibly liable for negligence. G6 Defendants argue that Plaintiff fails to sufficiently allege an actual

agency relationship between G6 Defendants and Defendant IE, reasoning that the allegations in the complaint merely illustrate a franchisor's right to control its brand, rather than the required day-to-day control over Defendant IE and its employees. ECF 19 at 21–23; *see id.* at 29. Defendants also argue that Plaintiff's allegations do not demonstrate that Defendant IE, itself, is liable for negligence due to a lack of legal duty. *Id.* at 23; *see id.* at 29; ECF 31 at 14.

### a.  Agency Relationship between G6 Defendants and Defendant IE

An agency relationship "results from the manifestation of consent by one person to another that the other shall act on behalf and subject to his control, and consent by the other so to act." *Vaughn v. First Transit, Inc.*, 346 Or. 128, 135 (2009) (emphasis omitted) (quoting *Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 617 (1995)). "The agency relationship can arise either from actual consent (express or implied) or from the appearance of such consent." *Eads v. Borman*, 351 Or. 729, 736 (2012) (en banc) (citation omitted). Under Oregon law, a franchise relationship does not automatically give rise to an agency relationship as a matter of law. *Viado v. Domino's Pizza, LLC*, 230 Or. App. 531, 534 (2009). A franchisor may only be held accountable for the acts of its franchisee if the franchisor controls the day-to-day operation of the franchisee. *Viado*, 230 Or. App. at 534 (Or. App. 2009) (quoting *Miller v. McDonald's Corp.*, 150 Or. App. 274, 280 (1997)). The test for vicarious liability further requires that the franchisor controlled the specific conduct that caused the plaintiff's injury. *Id.* at 551–52. As recognized by the Oregon Supreme Court, "for a principal to be vicariously liable for the negligence of its nonemployee agents, there ordinarily must be a connection between the principal's 'right to control' the agent's actions and *the specific conduct* giving rise to the [claim]." *Vaughn*, 346 Or. 128 at 138 (emphasis added).

Plaintiff alleges that G6 Defendants exercised actual control over the day-to-day activities of its franchisee Defendant IE. ECF 1-1 at ¶ 70. For example, Plaintiff alleges that Defendant IE had to abide by G6 Defendants' corporate policies, including "booking and reservations, room rates, websites . . . revenue management tools, profit sharing terms, hiring procedures, employment policies and decisions, employee wages, building and design standards, rules of operation, standardized employee training, inspections of facilities and operations, and security policies and procedures." *Id.* Additionally, Plaintiff alleges G6 Defendants required Defendant IE to follow practices and programs implemented to prevent human trafficking. *Id.*

G6 Defendants dispute whether they had day-to-day control of Studio 6 via Defendant IE. Although Plaintiff may ultimately fail to establish the agency allegations, this Court must accept as true all well-pleaded factual allegations in the complaint at this stage in the proceeding and construe them in Plaintiff's favor. *See Daniels-Hall*, 629 F.3d at 998; *A.B. v. Hilton Worldwide*, 484 F. Supp. 3d at 940. This Court finds that Plaintiff has met her burden of alleging a plausible claim for an actual agency relationship between G6 Defendants and Defendant IE. Plaintiff has alleged facts which, if proven, support her theory that G6 Defendants had authority to control aspects of Studio 6 operations connected to Plaintiff's claim. For example, Plaintiff alleges G6 Defendants exercised control over the means and methods of daily hotel activities through policies on hiring procedures, employment policies and decisions, employee wages, building and design standards, rules of operations, standardized employee training, inspections of facilities and operations, and security policies and procedures. ECF 1-1 at ¶ 70.

Plaintiff additionally alleges that G6 Defendants are liable for the actions of individual Defendants John Doe 1, Shilash Patel, Vipul Patel, and other employees and agents of G6 Defendants under the doctrine of respondeat superior. ECF 1-1 at ¶¶ 70–71. "Under the doctrine

of respondeat superior, an employer is liable for an employee's tort when the employee acts within the course and scope of employment." *Minnis v. Oregon Mut. Ins. Co.*, 334 Or. 191, 201 (2002) (emphasis omitted) (citing *Chesterman v. Barmon,* 305 Or. 439, 442 (1988)). Plaintiff alleges that John Doe 1, Shilash Patel, Vipul Patel, and other individuals were employees of Defendant IE's hotel, Studio 6. ECF 1-1 at ¶¶ 18–21. Plaintiff has sufficiently alleged an agency relationship between G6 Defendants and Defendant IE—which is the employer of John Doe 1, Shilash Patel, Vipul Patel. Accordingly, Plaintiff has also sufficiently alleged that G6 Hospitality may be vicariously liable for the actions of the individual defendants which occurred within the scope of their employment at Studio 6. *See A.B. v. Hilton Worldwide*, 484 F. Supp. 3d at 939 (requiring that plaintiff "plausibly allege that . . . the hotels *or hotel staff* are plausibly liable" to state a claim for vicarious liability between hotel chains and their branded hotels) (emphasis added); *Miller v. D.F. Zee's, Inc.*, 31 F. Supp. 2d 792, 806 (D. Or. 1998) ("[A] franchisor may be held vicariously liable under an agency theory for intentional acts . . . by employees of a franchisee.") (citation omitted).

### b. Special Relationship between Plaintiff and Defendant IE

While Plaintiff has failed to plead a special relationship between Plaintiff and G6 Defendants, Plaintiff has sufficiently pled a special relationship between Plaintiff and Defendant IE, giving rise to a heightened duty of care on behalf of Defendant IE. Under Oregon law, "[b]usiness owners and operators have a heightened duty of care toward patrons—invitees—with respect to the condition of their premises that exceeds the general duty of care to avoid unreasonable risks of harm to others." *Bagley*, 356 Or. at 563 (2014) (citations omitted). "In general, it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit." *Id.* (quoting *Woolston*, 297 Or. at 557). "[A] business, as a possessor of premises,

PAGE 19 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART G6
DEFENDANTS' MOTION TO DISMISS

has a duty to take reasonable steps to protect its visitors from reasonably foreseeable criminal acts by third persons." *Kids Inc. of Dallas*, 245 Or. App. at 278. Plaintiff pleads that Defendant IE is the owner and operator of the Studio 6 property at issue. ECF 1-1 at ¶ 12. Defendant IE is therefore a possessor of premises and has a duty to protect visitors from reasonably foreseeable criminal acts by third persons. *See, e.g.*, *Radke v. Carpenter*, 281 Or. 671, 677 (1978) ("The owner of a[n] . . . inn owes his business guests a duty of ordinary reasonable care to protect them from injury at the hands of other patrons while on the premises.").

This Court finds that Plaintiff has plausibly alleged an agency relationship between G6 Defendants and Defendant IE, as Plaintiff has alleged facts which, if proven, support a theory that the G6 Defendants had control over the day-to-day operations of Studio 6 and its employees that relate to Plaintiff's claim. Further, this Court finds that Plaintiff has plausibly alleged that Defendant IE had a legal duty to prevent Plaintiff's trafficking under Oregon law and that IE violated that legal duty. Plaintiff has alleged sufficient facts that employees on site at Studio 6 were aware that Plaintiff was being trafficked. Included in the Complaint are allegations that there were a variety of indicators that Plaintiff was the victim of sex trafficking in Studio 6. Further, Plaintiff alleges that one employee, John Doe 1, engaged in sex with one of her traffickers. Plaintiff further alleges that John Doe 1 suggested that Plaintiff engage in sex acts with him and his girlfriend. Viewing the allegations and drawing all inferences in the light most favorable to Plaintiff, this Court finds Plaintiff has sufficiently plead both a negligence claim against the employees of Studio 6 and Defendant IE and that G6 Defendants are vicariously liable for such negligence. Accordingly, this Court DENIES G6 Defendants' motion to dismiss Plaintiff's vicarious negligence claim.

**C.  O.R.S. § 30.867 Claim**

Plaintiff also brings a claim under O.R.S. § 30.867 against all Defendants for violation of O.R.S. § 163.266 (Trafficking in Persons),[2] alleging Defendants "knowingly benefit[ed] financially . . . from participation in a venture in which [Plaintiff] was [sex trafficked]." *Id.* at ¶¶ 34–37. Plaintiff asserts this claim against G6 Defendants both directly, *id.* at ¶¶ 60–66, and vicariously for the conduct of Defendant IE and its employees, *id*. at ¶¶ 69–71. For the reasons stated below, this Court GRANTS G6 Defendants' motion to dismiss Plaintiff's direct liability claim under O.R.S. § 30.867 and DENIES G6 Defendants' motion to dismiss Plaintiff's vicarious liability claim under O.R.S. § 30.867.

As considered more fully below, evaluating Defendants' motion to dismiss Plaintiff's claim under O.R.S. § 30.867 requires this Court to determine, as a matter of first impression, what state of mind a defendant must possess to be held civilly liable under Oregon's civil

---

[2] O.R.S. § 163.266 provides, in relevant part:

(1) A person commits the crime of trafficking in persons if the person knowingly recruits, entices, harbors, transports, provides or obtains by any means, or attempts to recruit, entice, harbor, transport, provide or obtain by any means, another person and:

(a) The person knows that the other person will be subjected to involuntary servitude as described in ORS 163.263 or 163.264;

(b) The person knows or recklessly disregards the fact that force, fraud or coercion will be used to cause the other person to engage in a commercial sex act; or

(c) The person knows or recklessly disregards the fact that the other person is under 18 years of age and will be used in a commercial sex act.

(2) A person commits the crime of trafficking in persons if the person knowingly benefits financially or receives something of value from participation in a venture that involves an act prohibited by subsection (1) of this section or ORS 163.263 or 163.264.

trafficking statute. Plaintiff and G6 Defendants disagree as to the scienter required for defendants under O.R.S. § 30.867. G6 Defendants maintain that O.R.S. § 30.867 requires actual knowledge or reckless disregard of the victim's trafficking, while Plaintiff asserts that no such scienter requirement applies. ECF 19 at 12; ECF 29 at 7–8. This Court first examines the scienter required under the "knowingly benefitted financially" element and then the "participation in a venture that involves a prohibited act" element. This Court finds that (1) a defendant must act with an awareness that they are benefitting financially to fulfill the "knowingly benefitted financially" element and (2) a defendant must know or recklessly disregard the purpose of the venture to fulfill the "participation in a venture that involves a prohibited act" element.

### 1. Statutory Interpretation of O.R.S. § 30.867

Both parties have failed to provide this Court with any interpretations of O.R.S. § 30.867 in Oregon courts. Accordingly, this Court will apply Oregon's rules of statutory construction in interpreting the statute's scienter requirements.

When considering the meaning of an Oregon statute, courts in this district apply Oregon rules of statutory construction. *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010). The "paramount goal" is "discerning the legislature's intent." *State v. Gaines*, 346 Or. 160, 171 (2009) (en banc). Oregon courts, interpreting Oregon law, have outlined three steps that courts must follow in ascertaining legislative intent. *Id.* (interpreting 2001 amendments to O.R.S. 174.020). First, a court must examine the text and context of the legislation in question. *Id.* Second, the court may consider pertinent legislative history proffered by a party, even if the court does not find ambiguity in the legislative text. *Id.* at 172. And finally, if the legislature's intent remains unclear after examining the text, context, and legislative history, "the court may

resort to general maxims of statutory construction to aid in resolving the remaining uncertainty."
*Id.*

### 2. Role of Trafficking Victims Protection Reauthorization Act ("TVPRA")

As a preliminary matter, when interpreting the scienter requirements in § 30.867, both
Plaintiff and G6 Defendants compare the language in O.R.S. § 30.867 to similar statutory
language in the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"). *See* 18
U.S.C. § 1595(a). The TVPRA provides, in relevant part: "[a]n individual who is a victim of a
violation of this chapter may bring a civil action against . . . whoever knowingly benefits,
financially or by receiving anything of value from participation in a venture which that person
knew or should have known has engaged in an act in violation of this chapter . . . in an
appropriate district court of the United States . . . ." *Id.* Defendant claims that this statute
provides a direct analog to O.R.S. § 30.867. ECF 19 at 16. Defendant further argues that the
TVPRA imposes a lower standard of constructive knowledge compared with O.R.S. § 30.867,
which requires actual knowledge or reckless disregard of the victim's trafficking. *Id.* at 12; ECF
31 at 2. By contrast, Plaintiff claims that O.R.S. § 30.867 was not enacted as a direct analog and
that the "knowingly" requirement in O.R.S. § 30.867 was not meant to apply to the "participation
in a venture" clause. ECF 29 at 4–8.

O.R.S. §§ 30.867 and 163.266 were both enacted through a single bill in 2007, a year
before Congress passed the TVPRA. *Id.* at 4–5. In passing the TVPRA, Congress added the
following scienter requirements: "An individual who is a victim of a violation of this chapter
may bring a civil action against the perpetrator (or whoever **knowingly benefits, financially** or
by receiving anything of value from participation in a venture which that person **knew or should
have known has engaged in an act in violation of this chapter**) in an appropriate district court

of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C. §

1595(a) (emphasis added); ECF 19 at 5. The language in O.R.S. §163.266 and, by extension,

O.R.S. § 30.867, has not changed since these additions to the federal statute. ECF 29 at 6.

The legislative history provided by the parties indicates that the relevant scienter

language in the TVPRA was incorporated after O.R.S. 30.867 was enacted. ECF 29 at 4; ECF 31

at 4. Nonetheless, Oregon courts have looked to parallel federal precedent in analyzing an

Oregon statute, even when the state statute precedes the federal law. *Portland State Univ.*

*Chapter of Am. Ass'n of Univ. Professors v. Portland State Univ.*, 352 Or. 697, 711 (2012) (en

banc) (observing that Oregon Supreme Court has looked to Title VII precedent to analyze state

statues, even though "Oregon enacted a number of civil rights statutes many years before

Congress enacted Title VII"). "Oregon courts may examine federal precedent for contextual

support when they construe state statutes that parallel federal law." *Id.* Accordingly, this Court

looks to TVPRA precedent for context when analyzing the parallel provision in O.R.S. § 30.867.

### 3.  Direct Liability Claim

Plaintiff brings a direct claim under O.R.S. § 30.867 against G6 Defendants for violation

of O.R.S. § 163.266, alleging Defendants "knowingly benefit[ed] financially . . . from

participation in a venture in which [Plaintiff] was [sex trafficked]." ECF 1-1 at ¶¶ 60–66. This

Court will first examine the scienter required under the "knowingly benefitted financially"

element and then the "participation in a venture that involves a prohibited act" element.

#### a.  Knowingly Benefitted Financially

As noted above, when applying the Oregon rules of statutory construction, a court must

first examine the text and context of the legislation in question. *Gaines*, 346 Or. at 171. The

relevant statute at issue, O.R.S. § 30.867, provides that "a person injured by a violation of . . .

PAGE 24 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART G6
DEFENDANTS' MOTION TO DISMISS

163.266 may bring a civil action for damages against a person whose actions are unlawful under ORS . . . 163.266." O.R.S. § 30.867. O.R.S. § 163.266, in turn, states that: "[a] person commits the crime of trafficking in persons if the person knowingly benefits financially or receives something of value from participation in a venture that involves an act prohibited by subsection (1) of this section or ORS 163.263 or 163.264." O.R.S. § 163.266(2). Based on the plain meaning of this text, Defendants must "knowingly benefit[] financially" under this statute.

Under Oregon's Criminal Code, "knowingly" means that "a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." O.R.S. § 161.085(8). Applying this definition to O.R.S. § 30.867, a defendant must act with an awareness that they are benefitting financially to fulfill this element. *See Delgado v. Souders*, 334 Or. 122, 132–33 (2002) (applying definition of "knowingly" from O.R.S. § 161.085 to civil anti-stalking statute with criminal statute counterpart); *see also City of Portland v. Tuttle*, 295 Or. 524, 530 n.8 (1983) (applying definition of "knowingly" from O.R.S. § 161.085 to municipal ordinance); *A.B. v. Hilton Worldwide*, 484 F. Supp. 3d at 936 (citations omitted) (interpreting the knowingly benefits financially element of § 1595 as "'merely requir[ing] that Defendant knowingly receive a financial benefit'"); *State v. Spainhower*, 251 Or. App. 25, 28 (2012) ("When particular terms are not statutorily defined, we give them their plain, natural, and ordinary meaning unless the context indicates that the legislature intended some other meaning.").

In addressing G6 Defendants' direct liability claim under O.R.S. § 30.867, Plaintiff asserts that the money gained from Plaintiff's sex trafficking was used to pay for the room at Studio 6 where she was being trafficked. ECF 1-1 at ¶ 4. Plaintiff further alleges, upon information and belief, that G6 Defendants receive a share of each room's rental payment at

Studio 6. *Id.* at ¶ 44. G6 Defendants respond that Studio 6 was "independently owned and operated by a third-party franchisee, IE Hotel Group, LLC," and that, as franchisors, G6 Defendants could not have "knowingly accepted room rent from the pimp trafficking [of Plaintiff]." ECF 19 at 10 (quoting ECF 1-1 at ¶ 44). However, G6 Defendants also admit to receiving royalties tied to Studio 6 rental revenues. *Id.*

As this Court has previously held in the TVPRA context, at this stage, a plaintiff's allegations that "[the defendants] benefitted from [the plaintiff's] trafficking each time they received royalty payment for rooms in which she was being kept" are "sufficient to meet the 'knowingly benefits' element." *A.B. v. Hilton Worldwide*, 484 F. Supp. at 936. This Court finds that Plaintiff alleges sufficient facts that G6 Defendants "knowingly benefitted" financially from her trafficking under O.R.S. § 30.867.

### b. Participation in a Venture that Involves a Prohibited Act

The parties provide conflicting interpretations of the scienter required for the second element of participation in a venture that involves a prohibited act under O.R.S. § 30.867. G6 Defendants assert that O.R.S. § 30.867 directly incorporates the actual knowledge or reckless disregard requirement of the underlying criminal statute: O.R.S. § 163.266. ECF 31 at 4. Meanwhile, Plaintiff asserts that no scienter requirement applies. ECF 29 at 4. Unlike the TVPRA—which states that a person may bring a civil action against "whoever knowingly benefits, financially . . . from participation in a venture which that person *knew or should have known* has engaged in an act [of trafficking] in violation of this chapter," 18 U.S.C. § 1595 (emphasis added)—O.R.S. § 30.867 does not expressly provide a second scienter requirement. Instead, O.R.S. § 163.266 provides that "[a] person commits the crime of trafficking in persons if the person knowingly benefits financially . . . from participation in a venture that involves an act

[of trafficking] prohibited by . . . this section." Plaintiff asserts that the choice not to include a second scienter requirement implies that there is no scienter required. ECF 29 at 4. Defendants argue, however, that by omitting a second scienter requirement from the statute, the legislature intended for "knowingly" to apply to both the first and second element. ECF 19 at 12.

As stated above, O.R.S. § 30.867 enables a person injured by conduct violating O.R.S. § 163.266—Oregon's criminal trafficking statute—to bring a civil action for damages. O.R.S. § 163.266 states in relevant part that: "[a] person commits the crime of trafficking in persons if the person knowingly benefits financially or receives something of value from participation in a venture" where "the person knows or recklessly disregards the fact that force, fraud or coercion will be used to cause the other person to engage in a commercial sex act." O.R.S. § 163.266. O.R.S. § 30.867 incorporates the language of O.R.S. § 163.266 by reference. Accordingly, based on a plain reading of these statutes together, in order to "participate in a venture that involves [the prohibited act of sex trafficking]," the participants have to know or recklessly disregard the purpose of the venture.

This Court finds that G6 Defendants' actions do not amount to direct participation in a sex trafficking venture. As outlined in Section B, Plaintiff has alleged numerous facts that would have put employees and managers at Studio 6, and therefore Defendant IE, on notice that Plaintiff was being trafficked. However, these allegations, even when viewed in the light most favorable to Plaintiff, fall short of plausibly alleging G6 Defendants had knowledge of or recklessly disregarded the alleged trafficking of Plaintiff at Studio 6. Plaintiff's allegations indicate that G6 Defendants had notice of sex trafficking generally occurring at their hotels and perhaps even at Studio 6, *id.* at ¶¶ 24–33, but Plaintiff has not alleged facts which sufficiently link notice of *Plaintiff's* sex trafficking to G6 Defendants. *See A.B. v. Hilton Worldwide*, 484 F.

Supp. 3d at 938–39 (dismissing TVPRA claim against franchisor because plaintiff's complaint failed to demonstrate participation in plaintiff's trafficking).

Plaintiff must allege facts showing how G6 Defendants knew or, at least, recklessly disregarded the fact that Plaintiff D.B. was trafficked at Studio 6. Plaintiff has not done so. Accordingly, Plaintiff has not alleged facts sufficient to state a claim for direct liability under O.R.S. § 30.867. This Court GRANTS Defendants' motion to dismiss Plaintiff's direct liability claim against G6 Defendants under O.R.S. § 30.867 with leave to amend.

### 4. Vicarious Liability Claim

Plaintiff also asserts a vicarious liability claim under O.R.S. § 30.867 against G6 Defendants for the conduct of Defendant IE and its employees. ECF 1-1 at ¶¶ 69–71. G6 Defendants argue that, even if Plaintiff has plausibly alleged the existence of an agency relationship between G6 Defendants and Defendant IE—as this Court has found that she has— she has still failed to plausibly allege Defendant IE or its employees are liable for any violation of O.R.S. § 30.867. This Court disagrees.

#### a. Knowingly Benefitted Financially

Plaintiff has sufficiently pled facts to satisfy the first element of O.R.S. § 30.867. Plaintiff alleges that the money gained from her sex trafficking was used to pay Defendant IE for the room in which she was being held. ECF 1-1 at ¶ 4. G6 Defendants also admit to receiving royalties tied to Studio 6 rental revenues. ECF 19 at 10. As this Court has found in the TVPRA context, at the pleading stage, a plaintiff's allegations that "[the defendants] benefitted from [the plaintiff's] trafficking each time they received royalty payments for rooms in which she was being kept" are "sufficient to meet the 'knowingly benefits' element." *A.B. v. Hilton Worldwide*, 484 F. Supp. 3d at 936 (discussing the "knowingly benefits" element of 18 U.S.C. § 1595). This

Court finds that Plaintiff alleges sufficient facts that Defendant IE "knowingly benefitted" financially from her trafficking under O.R.S. § 30.867.

**b.  Participation in a Venture that Involves a Prohibited Act**

As noted above, Plaintiff has sufficiently pled facts plausibly suggesting that Defendant IE or its employees participated in a prohibited venture, the second element of O.R.S. § 30.867. Plaintiff alleges that Defendant John Doe 1, an employee of Studio 6, "paid for sex with the female trafficker who exploited [Plaintiff]," ECF 1-1 at ¶ 37, and that Defendant John Doe 1 suggested that Plaintiff should "engage in a three-way sexual relationship with him along with his girlfriend," *id.* at ¶ 39. This Court has recognized that a relationship between a member of the hotel staff and a plaintiff's trafficker may be evidence that a hotel knew or should have known of the plaintiff's trafficking in the TVPRA context. *A.B. v. Hilton Worldwide*, 484 F. Supp. 3d at 941 (citing *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-00656-BLF, 2020 WL 4368214, *6 (N.D. Cal. July 30, 2020)). Based on Plaintiff's allegations concerning John Doe 1, along with numerous factual allegations in the Complaint that would have put Defendant IE's employees on notice that Plaintiff was being trafficked, this Court finds that plaintiff plausibly alleges that Defendant IE knowingly or with reckless disregard participated in a sex trafficking venture sufficient to establish the second element.

Knowledge of prostitution is generally not sufficient to satisfy knowledge of sex trafficking. *See A.B. v. Hilton Worldwide*, 484 F. Supp. 3d at 941 (collecting TVPRA cases). However, Plaintiff also alleges facts suggesting that Defendant IE or its employees knew or recklessly disregarded the fact that she was subjected to fraud, force, threats of force, or coercion. Plaintiff alleges that widely known indicators of trafficking include "younger individual with an older "boyfriend," "frequent male visitors to a room for short periods of

time," "guest shows signs of fear, anxiety, tension, submission, and/or nervousness," "guest shows signs of malnourishment, poor hygiene, or lack of sleep," and "guest lacks freedom of movement or is constantly monitored." *Id.* at ¶ 43. Among other allegations, Plaintiff pleads that she was kept under close watch at Studio 6 for nearly a week and was not allowed to leave her room without her traffickers unless she stayed within view of the room, *id.* at ¶ 50, that she was compelled to have sex with men for money multiple times a day at Studio 6, *id.* at ¶ 51, and that she was deprived of food if she failed to earn enough money for her traffickers, *id.* Accordingly, Plaintiff has alleged sufficient facts supporting a cognizable legal theory that Defendant IE or its employees had actual knowledge of or recklessly disregarded her sex trafficking. Plaintiff's allegations are sufficient to fulfill the second element of O.R.S. § 30.867.

Taking Plaintiff's allegations as true, Plaintiff has sufficiently alleged a vicarious claim against G6 Defendants under O.R.S. § 30.867. Accordingly, this Court DENIES Defendants' motion to dismiss Plaintiff's vicarious liability claim against G6 Defendants under O.R.S. § 30.867.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss for Failure to State a Claim, ECF 19, filed by Defendants G6 Hospitality LLC, G6 Hospitality Franchising LLC, and G6 Hospitality Real Estate LLC is DENIED as to Plaintiff's negligence claims, DENIED as to Plaintiff's O.R.S. § 30.867 claim under vicarious liability, and GRANTED as to Plaintiff's O.R.S. § 30.867 claim under direct liability with leave to amend.

///

**IT IS SO ORDERED**.

DATED this 1st day of February, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge